UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---

Lin Liu,

Plaintiff,



-against-        No. _____

FEDERAL AVIATION ADMINISTRATION,

Defendant.                    **CROSS-GOLDENBERG, M.J.**

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

## I. INTRODUCTION

1. This case arises from the Federal Aviation Administration's ("FAA") ongoing failure to address significant and concentrated aircraft noise impacts resulting from materially evolved and continuously applied operational practices at LaGuardia Airport.

2. Plaintiff seeks judicial relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, including § 706(1), for agency action unlawfully withheld or unreasonably delayed.

3. Although the TNNIS RNAV departure procedure has existed for years, its operational use has materially evolved in frequency, concentration, and resulting impacts, leading to frequent, concentrated, and relatively low-altitude overflights over residential communities in Flushing, Queens.

REC'D IN PRO SE OFFICE
APR 6 '26 AM11:55

4. On November 19, 2025, Plaintiff submitted a formal petition requesting FAA review of these operational impacts. The FAA received the petition on November 24, 2025 but has failed to issue any substantive response.

5. This continued inaction has resulted in ongoing and repeated exposure to concentrated aircraft noise and related impacts affecting Plaintiff's home and normal living conditions.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

7. Venue is proper in this district under 28 U.S.C. § 1391(e) because Plaintiff resides in this district and the events giving rise to this action occurred within this district.

## III. PARTIES

8. Plaintiff Lin Liu is a resident of Flushing, Queens, New York, directly affected by aircraft departures from LaGuardia Airport.

9. Defendant Federal Aviation Administration is a federal agency responsible for managing the national airspace system and approving air traffic procedures.

## IV. FACTUAL ALLEGATIONS

### A. Evolving Operational Practices

10. Beginning in or around July 2023, the FAA has increasingly utilized the TNNIS RNAV departure procedure in a manner that concentrates aircraft departures over specific residential communities.

11. These operations are ongoing, repeated, and represent a material change in practical application compared to prior operational patterns.

**B. Community Impacts**

12. As a result, Plaintiff and surrounding residents experience ongoing and repeated aircraft overflights.

13. Aircraft are frequently routed at relatively low altitudes and high frequency, producing clearly audible and intrusive noise.

14. These impacts include:

· Persistent and repetitive aircraft noise;

· Repeated vibrations of varying intensity, including perceptible low-level and at times moderate vibrations within residential structures;

· Sleep disruption;

· Interference with the use and enjoyment of Plaintiff's home;

· Diminished quality of life.

15. These impacts occur regularly and affect normal living conditions within the home.

**C. FAA Failure to Act**

16. On November 19, 2025, Plaintiff submitted a formal petition requesting FAA review.

17. The FAA received the petition on November 24, 2025. See Exhibit A and Exhibit B.

18. The FAA has not issued a substantive response.

19. Despite repeated and documented submission, the FAA has failed to respond for over four months.

20. This delay is unreasonable given the ongoing nature of the harm.

21. The FAA's continued inaction results in ongoing exposure to concentrated aircraft noise over Plaintiff's residence.

---

## V. CLAIM FOR RELIEF

### COUNT I – FAILURE TO ACT (APA § 706(1))

22. Plaintiff repeats and incorporates the foregoing allegations.

23. The FAA has a legal obligation to consider and respond to petitions raising significant and ongoing operational impacts.

24. The FAA's failure to respond constitutes agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1).

25. Such delay is unreasonable under governing legal standards, including the TRAC factors.

### COUNT II – ARBITRARY AND CAPRICIOUS ACTION (APA)

26. The FAA's continued reliance on outdated assumptions and failure to evaluate current operational impacts is arbitrary and capricious under 5 U.S.C. § 706(2).

---

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that the FAA has unlawfully withheld or unreasonably delayed agency action in violation of the Administrative Procedure Act;

2. Order the FAA to issue a timely and substantive response to Plaintiff's petition;

3. Order the FAA to evaluate current operational practices and their impacts consistent with applicable law, including consideration of whether further review is required;

4. Direct the FAA, during the course of such review and any associated public participation process, to consider and, where appropriate, implement interim measures to reduce concentrated impacts on affected communities and to mitigate newly intensified impacts on residential areas that were not previously subject to such concentrated overflight activity;

5. Grant such other and further relief as the Court deems just and proper.

---

## VII. SIGNATURE

*Lin Liu*

Lin Liu

April 6, 2026

42-05 Parsons Boulevard Apt 3B

Flushing, NY 11355

(718) 839-0780

linlin61258@yahoo.com

Plaintiff (Pro Se)

## VIII. EXHIBITS

Exhibit A – Petition submitted to FAA (Nov 19, 2025)

Exhibit B – Proof of mailing and delivery

Exhibit C – Timeline of TNNIS operational use

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that the FAA has unlawfully withheld or unreasonably delayed agency action in violation of the Administrative Procedure Act;

2. Order the FAA to issue a timely and substantive response to Plaintiff's petition;

3. Order the FAA to evaluate current operational practices and their impacts consistent with applicable law, including consideration of whether further review is required;

4. Direct the FAA, during the course of such review and any associated public participation process, to consider and, where appropriate, implement interim measures to reduce concentrated impacts on affected communities and to mitigate newly intensified impacts on residential areas that were not previously subject to such concentrated overflight activity;

5. Grant such other and further relief as the Court deems just and proper.

---

## VII. SIGNATURE

Lin Liu

April 6, 2026

42-05 Parsons Boulevard Apt 3B

Flushing, NY 11355

(718) 839-0780

linlin61258@yahoo.com

Plaintiff (Pro Se)

## VIII. EXHIBITS

Exhibit A – Petition submitted to FAA (Nov 19, 2025)

Exhibit B – Proof of mailing and delivery

Exhibit C – Timeline of TNNIS operational use

**EXHIBIT A**



Petition for Reconsideration

Submitted to the Federal Aviation Administration

November 19, 2025

REC'D IN PRO SE OFFICE
APR 6 '26 AM 11:56

# TABLE OF CONTENTS

**Submission to the Federal Aviation Administration**

**Petition for Reconsideration – TNNIS RNAV SID (LaGuardia Airport)**

Submitted by: **Lin Liu**

**I. Administrative Documents**

1. **Cover Letter to FAA (Rules Docket, AGC-200)**
2. **Petition for Reconsideration (Final Version)**

**II. Exhibits**

**Exhibit A** – Operational Timeline for the TNNIS RNAV SID (2012–2025)
**Exhibit B** – Legal Analysis on FAA CATEX and NHPA Compliance (2025)

# Cover Letter

**Lin Liu**
42-05 Parsons Boulevard, Apt. 3B
Flushing, NY 11355
Tel: (718) 839-0780 | Email: linlin61258@yahoo.com

Sent via USPS Certified Mail – Return Receipt Requested

**Date: November 19, 2025**

**To:**
Federal Aviation Administration (FAA)
Office of the Chief Counsel (AGC-200)
Attn: Rules Docket
800 Independence Avenue, S.W.
Washington, D.C. 20591

**Re: Petition for Reconsideration — TNNIS RNAV SID (LaGuardia Airport)**

Dear Sir or Madam:

Enclosed please find my Petition for Reconsideration submitted pursuant to the Administrative Procedure Act (5 U.S.C. §702) and the National Environmental Policy Act (42 U.S.C. §4332). This petition respectfully requests that the FAA review the continued authorization and present-day operational use of the TNNIS RNAV SID departure route from LaGuardia Airport, which has resulted in persistent and significant aircraft noise impacts over the residential communities of Flushing, Queens, New York.

This petition does **not** challenge the FAA's 2012 Categorical Exclusion determination itself. Rather, it concerns the substantial, year-round expansion in operational use of the TNNIS procedure since approximately 2023, which appears to require updated environmental review under NEPA and related statutes.

For clarity, the following documents are enclosed:

1. **Petition for Reconsideration**
2. **Exhibit A – Operational Timeline (TNNIS RNAV SID)**
3. **Exhibit B – Legal Analysis on FAA CATEX and NHPA Compliance**

Please acknowledge receipt of this petition. I would appreciate any written confirmation or reference number assigned to this submission for future correspondence.

Thank you for your attention to this matter.

Respectfully submitted,

Lin Liu

**Lin Liu**

# Petition for Reconsideration to the FAA

## I. Introduction

Pursuant to the Administrative Procedure Act (5 U.S.C. §702) and the National Environmental Policy Act (42 U.S.C. §4332), the petitioner respectfully requests that the Federal Aviation Administration (FAA) reconsider and review its continued authorization and operation of the TNNIS RNAV SID departure route from LaGuardia Airport (LGA), which has caused significant, sustained, and unreviewed increases in aircraft noise exposure over the residential communities of Flushing.

## II. Statement of Environmental Concern

The petitioner respectfully notes that the TNNIS RNAV SID departure route directs aircraft to conduct their initial climb—a phase involving maximum engine thrust, highest noise output and emissions, and greatest operational variability—directly over the long-established residential neighborhoods of Flushing, Queens. Concentrating such intense operations above a previously quieter and well-developed community represents a substantial change in noise distribution with significant environmental consequences. Critically, under NEPA and longstanding federal environmental justice principles, the FAA may not justify such a shift on the basis of demographic or density comparisons, nor may it reallocate noise burdens from one community to another without full environmental review and meaningful public participation. As the D.C. Circuit held in *City of Phoenix v. Huerta*, the FAA's discretion to manage airspace does not extend to relocating or intensifying noise over new communities without complying with its statutory procedural obligations. The expanded year-round use of the TNNIS route appears to constitute precisely the type of significant change that requires updated NEPA review rather than a categorical exclusion applied more than a decade ago.

## III. Legal and Procedural Basis under NEPA and APA

Prior to approximately July 18, 2023, the TNNIS RNAV SID was used only during the annual U.S. Open tennis tournament (approximately two weeks each year). In recent years, however, the procedure appears to have become a standard year-round departure path. To the petitioner's knowledge, no publicly disclosed Environmental Assessment (EA) or Environmental Impact Statement (EIS) addressing this expanded use has been completed or made available for community review as required under NEPA. The expansion of TNNIS into a year-round

procedure represents a substantial change in operational use that would ordinarily constitute a major federal action requiring full environmental review and public participation.

# IV. Relief Requested

The petitioner respectfully requests that the Federal Aviation Administration:

1. Determine whether the expanded year-round use of the TNNIS RNAV SID constitutes a new federal action requiring updated review under NEPA, and if so, initiate the appropriate Environmental Assessment (EA) or Environmental Impact Statement (EIS).
2. Evaluate whether interim adjustments — including, if appropriate, temporary suspension or modification of the low-altitude segment of the TNNIS procedure — are warranted pending completion of any required NEPA review, so as to avoid imposing newly concentrated environmental burdens on previously less-impacted residential communities.
3. Provide meaningful and transparent public engagement, including notice, opportunity for comment, and disclosure of relevant environmental data consistent with NEPA and APA requirements.
4. Provide a written response pursuant to 5 U.S.C. § 555(b) within a reasonable timeframe, explaining the agency's consideration of this petition.

# V. Conclusion

The petitioner respectfully requests that the Federal Aviation Administration conduct an updated review of the TNNIS RNAV SID under NEPA and the Administrative Procedure Act. The petitioner seeks only to ensure that any substantial shift in aircraft noise exposure—particularly where previously quieter residential communities such as Flushing are newly and significantly affected—is evaluated through the appropriate environmental and public-engagement processes required by federal law. An updated assessment will help ensure that long-term environmental, health, and community impacts associated with continuous low-altitude departure operations are properly considered before continued or expanded year-round use of the TNNIS procedure.

Respectfully submitted,

Lin Liu

Lin Liu
42-05 Parsons Blvd, Apt 3B
Flushing, NY 11355
Date: November 19, 2025

## Exhibit A — Operational Timeline for the TNNIS RNAV SID

This exhibit provides a concise timeline describing the historical and recent usage patterns of the TNNIS RNAV SID departure route at LaGuardia Airport (LGA). Information is based on publicly available reports, community observations, and historical tracking data.

| Exhibit | Time Period | Description | Source |
|---|---|---|---|
| A-1 | 2012 – 2020 | TNNIS RNAV SID used primarily during the annual U.S. Open (~2 weeks per year). Limited-use seasonal route. | City & State NY (2020); community statements |
| A-2 | 2021 – 2022 | Transition period where off-season TNNIS usage began increasing compared to historical patterns. | Community observations; flight-tracking summaries |
| A-3 | 2023 – Present | Consistent, year-round operational use. Represents substantial change in noise distribution with potential environmental significance. | Flight-tracking data; community reports |

# Exhibit B — Legal Analysis on FAA CATEX and NHPA Compliance

*(Prepared for submission with Petition for Reconsideration)*

## 1. Summary of Community Concerns

According to correspondence received in November 2025 from a representative of the LaGuardia Airport Community Action Group (LGACAR), community advocates have long questioned whether the FAA's 2012 Categorical Exclusion (CATEX) for the TNNIS RNAV SID included sufficient environmental and noise analysis. Community members state that no additional auditory or vibratory studies were conducted under the National Historic Preservation Act (NHPA) for the Broadway-Flushing Historic District, which lies directly beneath portions of the TNNIS departure path. These concerns, combined with the significant changes in operational usage since 2023, suggest a need for renewed environmental and historic-resource review.

## 2. Legal Review

### (a) NEPA – Environmental Review Obligations

A CATEX remains valid only when operational conditions have not changed in ways that may produce significant environmental effects. Based on available reports and observations, the TNNIS RNAV SID appears to have transitioned from a limited, seasonal procedure (used primarily during the annual U.S. Open) prior to approximately July 2023, to a regularly used, year-round departure path. This expanded and routine usage may constitute a substantial change under NEPA, warranting a new Environmental Assessment (EA) or Environmental Impact Statement (EIS).

### (b) NHPA – Protection of Historic Resources

Section 106 of the National Historic Preservation Act (54 U.S.C. §306108) requires federal agencies to assess whether proposed actions may adversely affect properties listed in the National Register of Historic Places. The Broadway-Flushing Historic District is such a property. If no auditory, vibratory, or related impact studies were conducted for this district, this suggests that the FAA may not have fulfilled its consultation duties under Section 106.

**(c) APA – Timing and Right to Review**

Under the Administrative Procedure Act and 49 U.S.C. §46110, petitions challenging FAA orders are generally subject to a 60-day filing period. However, courts have recognized that where impacts emerge only later, or where information becomes available after the initial agency action, later petitions may still be timely. Newly expanded operational impacts beginning in 2023 fall within this category of post-CATEX developments.

---

# 3. Conclusion

The historical record and long-standing concerns raised by community aviation groups support the conclusion that:

1. The FAA's 2012 CATEX determination for the TNNIS RNAV SID is outdated in light of significant subsequent operational changes;
2. The FAA may not have satisfied its consultation obligations under Section 106 of the NHPA for the Broadway-Flushing Historic District; and
3. The expansion of TNNIS into a year-round procedure beginning in 2023 appears to constitute a new federal action requiring updated NEPA and NHPA review.

---

Prepared by: **Lin Liu**
Date: **November 19, 2025**

**EXHIBIT B**

Proof of Mailing and Delivery of Petition to the FAA



**UNITED STATES POSTAL SERVICE.**

FLUSHING
4155 MAIN ST STE 1
FLUSHING NY 11355-9998
www.usps.com

11/19/2025                        02:55 PM

---

TRACKING NUMBERS
9589 0710 5270 2661 3941 12

---

TRACK STATUS OF ITEMS WITH THIS CODE
(UP TO 25 ITEMS)



---

TRACK STATUS BY TEXT MESSAGE
Send tracking number to 28777 (2USPS)
Standard message and data rates may apply

---

TRACK STATUS ONLINE
Visit https://www.usps.com/tracking
Text and e-mail alerts available

---

PURCHASE DETAILS

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| First-Class Mail® Large Envelope | 1 | | $2.44 |
| Washington, DC 20591 | | | |
| Weight: 0 lb 3.20 oz | | | |
| Estimated Delivery Date | | | |
| Sat 11/22/2025 | | | |
| Certified Mail® | | | $5.30 |
| Tracking # | | | |
| 9589 0710 5270 2661 3941 12 | | | |
| Return Receipt | | | $4.40 |
| Tracking # | | | |
| 9590 9402 9586 5121 5761 19 | | | |
| Total | | | $12.14 |

---

Grand Total:                      $12.14

---

Credit Card Remit                 $12.14
    Card Name: AMEX
    Account #: XXXXXXXXXXXX9558
    Approval #: 884753
    Transaction #: 319
    AID: A00000025010901 Contactless
    AL: AMEX CREDIT
    PIN: Verified

---

TO REPORT AN ISSUE
Visit https://emailus.usps.com

All hazardous labels/markings on reused
boxes MUST be completely
removed/obliterated if they no longer
match the contents.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

PREVIEW YOUR MAIL AND PACKAGES
Sign up for FREE at
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Customer Service
1-800-ASK-USPS
(1-800-275-8777)

---



**UNITED STATES POSTAL SERVICE.**

FLUSHING
4155 MAIN ST STE 1
FLUSHING NY 11355-9998
www.usps.com

11/19/2025                        02:35 PM

---

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Mailer 10.5 x 15 | 1 | $1.89 | $1.89 |

---

Grand Total:                      $1.89

---

Credit Card Remit                 $1.89
    Card Name: AMEX
    Account #: XXXXXXXXXXXX9558
    Approval #: 804206
    Transaction #: 317
    AID: A00000025010901 Contactless
    AL: AMEX CREDIT
    PIN: Verified

---

TO REPORT AN ISSUE
Visit https://emailus.usps.com

All hazardous labels/markings on reused
boxes MUST be completely
removed/obliterated if they no longer
match the contents.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

PREVIEW YOUR MAIL AND PACKAGES
Sign up for FREE at
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Customer Service
1-800-ASK-USPS
(1-800-275-8777)
Agents do not have any additional
information other than what is provided on
USPS.com.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.



or call 1-800-410-7420.

---

UFN: 352381-0002
Receipt #: 840-51300151-6-10496149-1
Clerk: 3



**EXHIBIT C**

Timeline of TNNIS Operational Use at LaGuardia Airport

# Exhibit C

## Timeline of TNNIS Operational Use at LaGuardia Airport

### Pre-2012 – Historical Operations

Runway 13 departures at LaGuardia Airport were historically distributed across multiple operational paths, including various climb procedures that dispersed aircraft traffic across a broader area.

These operations resulted in relatively distributed overflight patterns across surrounding communities.

### 2012 – Introduction of RNAV Procedures

As part of FAA airspace modernization efforts (NextGen), the FAA implemented RNAV departure procedures, including the TNNIS departure.

These actions were subject to categorical exclusions under NEPA and did not involve detailed environmental review.

### 2015 – Public Availability of TNNIS Procedure

FAA procedure charts confirm that the TNNIS RNAV departure was in existence by at least 2015 as one of several available Runway 13 departure procedures.

### 2018–2022 – Variable Operational Use

Public materials and community observations indicate that multiple Runway 13 departure procedures continued to be used, and operational patterns varied depending on conditions such as weather and traffic.

### July 2023 – Observed Operational Change

Beginning in or around July 2023, residents in Flushing, Queens began experiencing frequent and repeated aircraft departures using the TNNIS procedure over residential areas.

This represented a shift toward more concentrated and sustained use of this departure path.

## August–October 2023 – Increased Use Documented

Publicly available data and presentations indicated that TNNIS departures constituted a substantial portion of Runway 13 operations during this period.

## November 19, 2025 – Petition Submitted to FAA

Petitioner submitted a formal request to the FAA seeking review of the operational use of the TNNIS procedure and its environmental impacts.

## November 23, 2025 – FAA Receipt Confirmed

FAA received the petition (as evidenced by delivery confirmation).

## February–April 2026 – No Response / Continued Operations

As of early 2026:

- The FAA has not issued a substantive written response to the petition;
- The TNNIS departure procedure continues to be used on a frequent and sustained basis;
- Community impacts remain ongoing.